UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICKELLA MARTIN, | Case No. CV 16-1368-KK |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Mickella Martin ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her application for Title XVI Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

## I.

## **PROCEDURAL HISTORY**

On August 4, 2011, Plaintiff filed an application for SSI, alleging a disability onset date of June 18, 2011. Administrative Record ("AR") at 137-43. Plaintiff's application was denied initially on November 16, 2011, and upon reconsideration

on March 14, 2013. Id. at 66-79, 80-96, 97-100, 103-07. On April 5, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 110. On April 22, 2014, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ. Id. at 29-50. A vocational expert ("VE") also testified at the hearing. Id. at 47-49. On June 16, 2014, the ALJ issued a decision denying Plaintiff's application for SSI. Id. at 15-28.

On August 7, 2014, Plaintiff filed a request to the Agency's Appeals Council to review the ALJ's decision. Id. at 10-12. On January 12, 2016, the Appeals Council denied Plaintiff's request for review. Id. at 1-6.

On February 26, 2016, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1, Compl. This matter is before the Court on the Parties' Joint Stipulation ("JS"), filed January 9, 2017. Dkt. 19, JS.

## II.
## PLAINTIFF'S BACKGROUND

Plaintiff was born on May 27, 1975, and her alleged disability onset date is June 18, 2011. AR at 137. She was thirty-six years old on the alleged disability onset date and thirty-eight years old at the time of the hearing before the ALJ. Id. at 85, 204. Plaintiff has a high school education and no documented work experience. Id. at 226. Plaintiff alleges disability based on mental illness, morbid obesity, depression, lower back pain, knee pain, ankle pain, and arthritis in hands and knees. Id. at 66, 80.

## III.
## STANDARD FOR EVALUATING DISABILITY

To qualify for SSI, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work

she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[1]
4. Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.
5. Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that

---

[1] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

3

exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## THE ALJ'S DECISION

### A. STEP ONE

At step one, the ALJ found Plaintiff has not engaged "in substantial gainful activity since July 29, 2011, the application date." AR at 20.

### B. STEP TWO

At step two, the ALJ found Plaintiff "ha[d] the following severe impairments: obesity; and depression and learning disorder, not otherwise specified." Id.

### C. STEP THREE

At step three, the ALJ found Plaintiff does "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id.

### D. RFC DETERMINATION

The ALJ found Plaintiff had the following RFC:

> "to perform sedentary work as defined in 20 CFR 416.967(a) except: stand 2 hours of an 8 hour day; sit 6 hours of an 8 hour day; occasionally bend/stoop; lift 5 pounds frequently; 10 pounds occasionally; simple, routine, tasks."

Id. at 21.

### E. STEP FOUR

At step four, the ALJ found Plaintiff "has no past relevant work." Id. at 23.

///
///

**F.  STEP FIVE**

At step five, the ALJ found "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  Id.  The ALJ therefore concluded Plaintiff was not disabled.  Id. at 23-24.

## V.
## PLAINTIFF'S CLAIMS

Plaintiff presents four disputed issues: (1) whether the ALJ erred when he failed to consider application of Listing 12.05C based on Plaintiff's poor memory IQ score; (2) whether the ALJ erred when he failed to resolve conflicts between the DOT and the VE's identified jobs for Plaintiff; (3) whether the ALJ's credibility assessment is supported by substantial evidence; and (4) whether the ALJ committed reversible error in his assessment of Dr. Kubo's medical opinions.

The Court finds the fourth issue dispositive of this matter and thus declines to address the remaining issues.  See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand.").

## VI.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  Id.  To determine whether substantial evidence supports a finding, the reviewing court

"must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720 (citation omitted); see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a 'specific quantum of supporting evidence'") (citation omitted). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

## VII.
## DISCUSSION
### THE ALJ ERRED WHEN HE FAILED TO PROPERLY CONSIDER MEDICAL EVIDENCE BY PLAINTIFF'S TREATING PHYSICIAN REGARDING UPPER EXTREMITIES LIMITATIONS

**A. RELEVANT FACTS**

Dr. Koji Kubo, a family practitioner, is one of Plaintiff's treating physicians. AR at 423-50. In 2014, Dr. Kubo filled out a medical questionnaire where he noted Plaintiff suffers from moderate limitations in both of her upper extremities due to bilateral carpal tunnel syndrome. Id. at 423. Specifically, Dr. Kubo noted Plaintiff suffers from "numbness in hands," which prevents her from being able "to

perform duties that require manipulation with hands." Id. Dr. Kubo further noted that Plaintiff has been experiencing these symptoms for the last three years. Id. at 425. He opined that these limitations would "disrupt a regular job schedule with low physical demands" "continuously [and] every day." Id.

### B. APPLICABLE LAW

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her or] his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

7

1         While an ALJ is not required to discuss all the evidence presented, he must
2 explain the rejection of uncontroverted medical evidence, as well as significant
3 probative evidence. <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984)
4 (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in
5 the record and may not point to only those portions of the records that bolster his
6 findings. <u>See, e.g.</u>, <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1207-08 (9th Cir. 2001)
7 (holding an ALJ cannot selectively rely on some entries in plaintiff's records while
8 ignoring others). Lastly, while an ALJ is "not bound by an expert medical opinion
9 on the ultimate question of disability," if the ALJ rejects an expert medical
10 opinion's ultimate finding on disability, he "must provide 'specific and legitimate'
11 reasons for rejecting the opinion." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th
12 Cir. 2008) (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995), as
13 amended (Apr. 9, 1996)). An ALJ is not precluded from relying upon a physician's
14 medical findings, even if he refuses to accept the physician's ultimate finding on
15 disability. <u>See, e.g.</u>, <u>Magallanes v. Bowen</u>, 881 F.2d 747, 754 (9th Cir. 1989).

**C. ANALYSIS**

        Here, the ALJ erred when he failed to properly consider Dr. Kubo's medical conclusion that Plaintiff was limited in the use of her upper extremities because of numbness and pain in her hands. The ALJ reasoned Dr. Kubo's opinion deserved little weight because "the restrictions in [Dr. Kubo's opinion] are largely unsupported by objective findings in medical records." AR at 22. Furthermore, the ALJ noted "Dr. Kubo himself notes that the restrictions provided were based mostly on [Plaintiff's] subjective reports," but "the objective evidence provides good reasons for questioning the reliability of [Plaintiff's] subjective complaints." <u>Id.</u>

        Despite the ALJ's conclusion, there is evidence throughout the record that indicates Plaintiff has a history of pain and numbness in her hands for which she has been frequently treated over the past few years. Medical records further

document Plaintiff's diagnoses of both arthritis in the hands and carpal tunnel syndrome. For example, in June 2010, Dr. Tammy P. Cheng noted Plaintiff has been suffering from "bilateral hand tingling." AR at 330. She additionally noted Plaintiff's bilateral hand x-rays present indications of "a possible erosion," and that she would consider starting Plaintiff on a "disease-modifying agent for rheumatoid arthritis." Id. Additionally, in September 2011, Dr. Sonia G. Martin completed a Disability Determination Report in which she reported Plaintiff having "arthritis in her hands." Id. at 258. Furthermore, in October 2011, Dr. Shahrzad Sodagar-Marvasti noted Plaintiff suffers from pain and arthritis in her hands. Id. at 266. Lastly, in February 2013, Dr. Sohail K. Arfa noted Plaintiff complained of "occasional to frequent numbness on both hands," which "[a]t times . . . makes it difficult for [Plaintiff] to sleep at night." Id. at 281. Dr. Arfa also noted Plaintiff's "[h]andgrip strength was decreased bilaterally" and that she "may have early element of carpal tunnel syndrome." Id. at 284. Dr. Arfa ultimately concluded Plaintiff was "[l]imited to frequently for gross movements" of the hands. Id. at 285.

In light of Plaintiff's consistent complaints of pain in her hands and the objective medical evidence supporting an arthritis of the hands and carpal tunnel diagnosis, the ALJ erred when he chose to give Dr. Kubo's medical opinion regarding upper extremities limitations little weight. See Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (noting factors relevant to evaluating any medical opinion can include "the amount of relevant evidence that supports the opinion" and "the consistency of the medical opinion with the record as a whole"). While the ALJ may properly disregard a treating physician's opinion, he may only do so by "setting forth 'specific, legitimate reasons . . . based on substantial evidence' . . . supported by a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof." Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir.

1986)).  In this case, the ALJ erred when he failed to consider the medical evidence documenting Plaintiff's upper extremity pain, diagnoses, and resulting limitations before rejecting Dr. Kubo's medical opinion.  Moreover, while Dr. Kubo may not have conducted his own objective tests before coming to his conclusion, the record as a whole provides evidence that supports his findings.  See AR at 258, 266, 281, 284, 330.

Significantly, the ALJ failed to include *any* limitation regarding Plaintiff's upper extremities in the RFC determination or in the hypothetical he posed to the VE.  See AR at 21, 47-48.  By omitting any consideration of Plaintiff's arthritis of the hands and carpal tunnel syndrome, the ALJ did not account for the handling limitations recognized by Dr. Kubo and Plaintiff's other treating and examining physicians.  This is particularly concerning in light of the fact that the jobs the VE considered for Plaintiff – Final Assembler, DOT 713.687-018, and Order Clerk, DOT 209.567-014 – are sedentary positions that may require abilities like "manual dexterity," "control precision," "finger dexterity," and "wrist-finger speed." See Dictionary of Occupational Titles, Assemblers and Fabricators; Order Clerks. While the Court does not express any opinion as to whether Plaintiff is in fact disabled[2], the ALJ could not properly come to his conclusion without first considering any possible upper extremities limitations, which appear to have factual support throughout the record.

///
///
///
///

---

[2] The Court notes, for example, Dr. John Carroll's opinion that "Plaintiff would be able to do a job full time with low physical demands" and that "if [Plaintiff] were to receive social security disability, this would actually further worsen her health both mentally and physically, and could be one of the worst things possible for her."  AR at 421.

# VIII.
# **RELIEF**

## A. APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id. (citations omitted); see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

## B. ANALYSIS

In this case, the record has not been fully developed. The ALJ must consider Dr. Kubo's medical opinions in light of the additional medical evidence throughout the record, which indicates Plaintiff suffers from pain and numbness in her hands and has been diagnosed with arthritis of the hands and carpal tunnel syndrome. See AR at 258, 266, 281, 284, 330. Accordingly, remand for further proceedings is appropriate.

///
///
///
///
///
///

## IX.
## **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: February 15, 2017

HONORABLE KENLY KIYA KATO
United States Magistrate Judge